**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-62123-BLOOM/Valle**

SUNSHINE CHILDREN'S
LEARNING CENTER, LLC,
*on behalf of itself and all others similarly situated*

       Plaintiff,

v.

WASTE CONNECTIONS OF FLORIDA, INC.,

       Defendant.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Waste Connections of Florida, Inc.'s

Motion for Summary Judgment, ECF No. [139] ("Motion"). Plaintiff Sunshine Children's

Learning Center, LLC filed a Response in Opposition, ECF No. [150] ("Response"), to which

Defendant filed a Reply, ECF No. [157] ("Reply"). The Court has carefully reviewed the Motion,

all opposing and supporting submissions, the record in this case, the applicable law, and is

otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I.   BACKGROUND

Plaintiff filed its First Amended Complaint ("Complaint") on November 17, 2021,

asserting two counts against Defendant: breach of contract ("Count I"); and breach of the covenant

of good faith and fair dealing ("Count II"). *See generally* ECF No. [35]. The basis for Plaintiff's

claims against Defendant is that Defendant increased its rates in breach of the Parties' contract and

in breach of the covenant of good faith and fair dealing. *See id.* Plaintiff also asserts class

representation allegations. *See id.* ¶¶ 44-53.

On January 27, 2023, Defendant filed the instant Motion in which Defendant argues that: (1) it is entitled to summary judgment on Plaintiff's contract claim because there was no material breach and Plaintiff suffered no damages; (2) it is entitled to judgment on three affirmative defenses: voluntary payment, waiver, and failure to mitigate damages because Plaintiff paid its bills; and (3) Plaintiff's claim that Defendant's lack of notice breached the duty of good faith and fair dealing fails because the duty of good faith and fair dealing imposes no obligation beyond the contract and there was no breach of contract. *See generally* ECF No. [139].

In Response, Plaintiff argues that Defendant breached the notice provision of the Contract which was a condition precedent and a material term and that breach caused it damage. *See generally* ECF No. [150]. Plaintiff contends that Defendant is not entitled to judgment on its affirmative defenses because each requires that a party have full knowledge of the facts and circumstances, which Plaintiff did not. *Id*. at 27-31. Plaintiff also asserts that there are sufficient facts for a reasonable jury to conclude that Defendant breached the duty of good faith and fair dealing by failing to provide necessary information to Plaintiff. *Id*. at 13.

## II.  MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.

In October 2013, Plaintiff entered into a Customer Service Agreement ("Contract") for commercial waste collections with Waste Services, Inc., a predecessor to Defendant. ECF No. [138] ¶ 1. The Contract was initially for a seven-year term and automatically renewed in October 2020. *Id*. ¶¶ 3-4. The Contract ended in January 2022, after Defendant's franchise agreement with

Hillsborough County ended, and the company was no longer authorized to provide waste hauling services in Plaintiff's area. *Id.* ¶ 9.

The Contract contains the following language which governs rate adjustments:

> 5) Rate Adjustments. (a) Contractor may increase the rates and/or charges set out on the front of this Agreement and Customer agrees to pay the increased charges and/or rates provided that such increased charges and/or rates are base [*sic*] upon increased costs to Contractor including as a result of increases in any one or more of the following: disposal facility costs, landfill costs (including due to recycling costs or otherwise), fuel costs or surcharges, transportation costs, increases in fees or taxes imposed by local, state or federal governments and costs of regulatory compliance. "Landfill costs" means and includes all costs of disposal, however and whenever incurred by Contractor in respect of [*sic*] the disposal of Waste Materials collected from Customer. Without limiting the generality of the foregoing, disposal costs shall include the costs of disposal incurred by Contractor may [*sic*] also increase the rates and/or charges annually to reflect increases in the Consumer Price Index. (b) Adjustments to the rates and/or charges set out on the front of this Agreement other than as provided in Section 5 (a) hereof may be made by the Contractor by giving the Customer thirty (30) days prior written notice. Such rate adjustment will be effective on the date specified in the Contractors' notice unless the Customer gives written notice that it objects to the proposed adjustment within 15 days of receipt of the Contractor's notice. If the Customer gives written notice of objection pursuant to this subsection (b), this Agreement shall continue at the previous rate, but the Contractor may, at any time thereafter, terminate this Agreement by giving the Customer thirty (30) days prior written notice.

ECF No. [35-1] at 3.

Section 16 of the Contract governs "[a]ny notice required or permitted to be given by Contractor or Customer to the other under the agreement." *Id.* It states that any such notice "shall be given by either (i) personal delivery or (ii) by registered mail." *Id.*

The undisputed evidence establishes that Defendant raised Plaintiff's rates six times between September 2016 and January 2022. ECF No. [138] ¶ 13. Each of the increases implicated Section 5(b) of the Contract. ECF No. [149] ¶ 67. Defendant contends that it provided Plaintiff with written notice of the increases via monthly invoices, and for the October 2019 rate increase it sent a letter in advance. *Id.* ¶ 69; ECF No. [158] ¶ 69.

Plaintiff received monthly invoices for Defendant's services by regular U.S. mail indicating the amounts owed for the basic service charge and monthly disposal charge. ECF No. [138] ¶¶ 15-17. The monthly invoices do not contain messages relating to the first five rate increases imposed by Defendant after September 2016. ECF No. [149] ¶ 70. The June 25, 2021, monthly invoice stated, "Due to increasing costs in materials, we will be increasing our rates effective July 1st." *Id*. ¶ 71. None of the monthly invoices: (1) provided Plaintiff thirty days' prior written notice of any of the increases, (2) cited to either Section 5(a) or Section 5(b) of the Contract, (3) were sent by registered mail, or (4) were personally delivered to Plaintiff. *Id*. ¶¶ 72-75; ECF No. [158] ¶¶ 72-75.

With regard to the letter Defendant contends it sent providing written notice of the October 2019 rate increase: (1) Defendant has no record that the letter was mailed to Plaintiff, (2) the letter did not provide thirty days' prior written notice, (3) it was not sent by registered mail to Plaintiff, and (4) it was not personally delivered to Plaintiff. ECF No. [149] ¶¶ 76-80.

Plaintiff paid all of the charges that it was invoiced throughout the term of the Contract. ECF No. [138] ¶ 24. Plaintiff's payments were not automated. *Id*. ¶ 25. One of Plaintiff's managing members, Kelvin Dick ("Dick"), made Plaintiff's payments to Defendant using Bank of America's online bill payment service which required Dick to manually enter the amount of Plaintiff's payment to Defendant. *Id*. ¶¶ 21, 26-28.

Dick testified at his deposition that he "remember[ed] wondering about why the bills were going up so much" but did not call Defendant to ask. ECF No. [138-6] at 192:14-193:6. Record evidence confirms that invoices sent to Plaintiff by Defendant contained a phone number to call either "for invoice inquiries" or "for assistance." ECF No. [138-23]. Dick conceded that he could have called Defendant if he needed more information about the charges, and calling with questions

was consistent with his standard practice for dealing with utilities and other service providers. ECF No. [138-6] at 191:7-19.

Dick did not know whether Defendant's rate increases were based strictly on increases to Defendant's costs or were based on other factors. When asked whether he was free to call Defendant if he had a question, Dick answered that he had "a lot on [his] plate" and that "a lot of the times when [he] was doing the billing that [he] did not have a lot of time to do the billing. And then … [he] would forget before the next time and just pay the bill because [he] had to move on and do – do other jobs." ECF No. [138-6] at 193:7-14. Dick also testified that "if somebody had sent [him] registered mail or if somebody had came [sic] in person to talk to [him] about an increase, those are things that would have triggered" that this was something he "need[ed] to check out, and [he] would have … if [he] had been properly served notice according to the [C]ontract." ECF No. [138-6] at 175:4-9. The parties dispute whether, had Plaintiff called Defendant to object to the price increases, Defendant would have informed Plaintiff that they were Section 5(b) increases or whether Defendant trained and incentivized its customer service staff to mislead customers that called to complain about rates as to the nature of the increases and defend such increases. ECF No. [138] ¶ 64; ECF No. [149] ¶ 64.

Dick's brother, Wayne Charles ("Charles"), owns a fifty-one percent share in Plaintiff. ECF No. [138] ¶ 50. Charles testified that his roles in the business "are deciding on when – when we buy another location… when we by a vehicle … and otherwise, the decisions are – are made by [Dick] and Sandy." ECF No. [138-7] at 53:10-22. Charles also testified that he and Dick "talk a lot; but mostly, it's talk as opposed to decision making." *Id*. at 53:25-54:1. Charles explained that he did not review contracts for Plaintiff other than for new business purchasing and vehicles until an issue with the Contract in this case came up. *Id*. at 55:1-22. Charles expressed that he

sometimes spoke with Dick about costs incurred by Plaintiff but said the conversations on the costs were not very detailed. *Id*. at 57:14-19. Charles did not know anything about the Contract or rate increases being imposed on Plaintiff before the middle of 2021 when Dick sent the Contract and Defendant's invoices to Charles to review. ECF No. [149] ¶ 98.

Charles testified that he was previously an attorney on a class action case filed against another waste management company, Waste Management, in which Waste Management was accused by a different plaintiff, Savannah Oaks, of raising prices in violation of the Contract. *Id*. at 133:4-21. Charles explained that prior to the filing of that class action, he conducted an investigation in which he found that it was not obvious whether price increases were reflective of pass-through costs for each price increase, but at the end when he considered cumulative price increases it was obvious that the price increases were excessive. *Id*. at 141:14-142:3.

### III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see*

*also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990) (citation omitted).

## IV. DISCUSSION

### A.  Count I – Breach of Contract

Under Florida law, an "adequately pled breach of contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008); *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, 137 So. 3d 1081, 1094-95 (Fla. 3d DCA 2014); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) ("The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach."). "A 'material breach' of a contract is a failure, without legal excuse, to perform any promise or obligation or that goes 'to the essence of the contract.'" *Oriole Gardens Condos., III v. Indep. Cas. & Sur. Co.*, No. 11-60294-CIV, 2012 WL 718803, at *11 (S.D. Fla. Mar. 6, 2012) (quoting *Covelli Family, LP v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972)). Further, a party injured by a breach of contract is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have

been contemplated by the parties at the time the contract was entered." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002).

The parties do not dispute the existence of a valid contract during the relevant time period at issue, and the Court agrees. *See* ECF No. [138] ¶¶ 1, 3-4, 9; ECF No. [149] ¶¶ 1, 3-4, 9; ECF No. [35-1]. Thus, the first element of Plaintiff's breach of contract claim is satisfied. However, with regard to the second and third elements of a breach of contract action — namely, a material breach of the contract and resulting damages — the parties strongly dispute each other's respective positions. Defendant argues that the notice provision at issue was not a condition precedent or material term. Defendant also asserts that it substantially complied with the notice provision and that Plaintiff did not incur damages. Plaintiff takes the opposite position on each issue, responding that the notice provision was a condition precedent and a material term that Defendant breached, causing Plaintiff's damages.

### i. Whether notice provision was condition precedent

Defendant argues that the notice provision at issue was not a condition precedent to Plaintiff's duty to pay for the waste collection services it received. ECF No. [139] at 8. Plaintiff argues that the notice provision was a condition precedent and must be read in context with consideration for the other rights, conditions, and duties involved. ECF No. [150] at 13-14.

"A condition may be either a condition precedent to the formation of a contract or a condition precedent to performance under an existing contract." *Mitchell v. DiMare*, 936 So. 2d 1178, 1180 (Fla. 5th DCA 2006). A condition precedent to performance "is a condition which calls for the performance of an act after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend." *Univ. Hous. by Dayco Corp. v. Foch*, 221 So. 3d 701, 704 (Fla. 3d DCA 2017).

> While no particular words are necessary for the existence of a condition, such terms as "if", "provided that", "on condition that", or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise. In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties.
>
> However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition. . . . "Because of their harshness in operation, conditions are not favorites of the law."

*In re Est. of Boyar*, 592 So. 2d 341, 343 (Fla. 4th DCA 1992) (quoting *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)).

Thus, "[a]s a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." *Id.* (citing 17A Am. Jur. 2d *Contracts* § 471 (1991)); *see also Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 997 n.15 (11th Cir. 2012) (expressing "doubt that conditions precedent that are not expressly referenced by a written agreement may vary the explicit terms of a written agreement under Florida law" (citations omitted)); *Gunderson v. Sch. Dist. of Hillsborough Cnty.*, 937 So. 2d 777, 779 (Fla. 1st DCA 2006) ("Provisions of a contract will only be considered conditions precedent or subsequent where the *express* wording of the disputed provision conditions formation of a contract and or performance of the contract on the completion of the conditions." (emphasis added)); *Gay v. Brencorp, Inc.*, No. 09-1002, 2012 WL 162354, at *8 (M.D. Fla. Jan. 19, 2012), *aff'd*, 554 F. App'x 811 (11th Cir. 2014). Indeed, "[i]t is a principle of contract law that a mere stipulation or covenant in a contract will not be construed as a condition precedent, particularly where a forfeiture would result and where it appears a condition precedent, if desired, could have been provided for by express agreement." *In re Est. of Boyar*, 592 So. 2d at 344 (quoting *Palmquist v. Allardyce Petroleum Corp.*, 520 P.2d 783, 784 (Mont. 1974)).

Defendant contends that "the Court should not construe the notice provision to be a

'condition precedent' in the absence of particular contract language" indicating an express intent by the parties for a condition rather than a promise. ECF No. [139] at 9. Defendant asserts that "this Court has already held that a contractual provision should not be interpreted to be a 'condition precedent' in the absence of clear and explicit language expressing the parties' intent to enter this type of harsh and inflexible arrangement, particularly where forfeiture would result." ECF No. [157] at 3 (citing *GE Med. Sys. S.C.S. v. SYMX Healthcare Corp.*, No. 18-20922, 2021 WL 821433, at \*16-17 (S.D. Fla. Mar. 4, 2021))[1]. In that case, this Court determined that there was "no support in the express wording of the Duration clause for Defendant's position that the parties intended to create a condition precedent to the formation of a binding contract" where the Duration clause read "[t]his Settlement Agreement becomes effective upon payment of the first installment payment identified in paragraph (2) above." *Id.* at \*17. Plaintiff argues that this Court's prior ruling is distinguishable because it had to do with a condition precedent to contract formation rather than a condition precedent to performance of a contract; however, here there is language indicating the parties intended to create a condition precedent. *See* ECF No. [150] at 19. The Court finds no support for the contention that conditions precedent to formation of a contract are interpreted differently than a condition precedent to performance. However, the Court agrees that this case is distinguishable because there is language in the Contract indicating the parties' intent to create a condition precedent.

The entirety of Section 5 of the Contract reads and is formatted as follows:

5) Rate Adjustments. (a) Contractor may increase the rates and/or charges set out on the front of this Agreement and Customer agrees to pay the increased charges and/or rates **provided that** such increased charges and/or rates are base [*sic*] upon

---

[1] Defendant's additional citation to *Vyera Pharm., LLC v. Walgreen Co.*, 19 CV 5652, 2020 WL 433894, at \*9 (N.D. Ill. Jan. 28, 2020), is unpersuasive. There, the court considered a motion to dismiss and declined "to strictly construe the language of the contract upon which no rights or reliance interests depended, at th[e] early stage of the litigation."

increased costs to Contractor including as a result of increases in any one or more of the following: disposal facility costs, landfill costs (including due to recycling costs or otherwise), fuel costs or surcharges, transportation costs, increases in fees or taxes imposed by local, state or federal governments and costs of regulatory compliance. "Landfill costs" means and includes all costs of disposal, however and whenever incurred by Contractor in respect of [*sic*] the disposal of Waste Materials collected from Customer. Without limiting the generality of the foregoing, disposal costs shall include the costs of disposal incurred by Contractor may [*sic*] also increase the rates and/or charges annually to reflect increases in the Consumer Price Index. (b) Adjustments to the rates and/or charges set out on the front of this Agreement **other than as provided in Section 5 (a) hereof** may be made by the Contractor **by giving** the Customer thirty (30) days prior written notice. Such rate adjustment will be effective on the date specified in the Contractors' notice unless the Customer gives written notice that it objects to the proposed adjustment within 15 days of receipt of the Contractor's notice. If the Customer gives written notice of objection pursuant to this subsection (b), this Agreement shall continue at the previous rate, but the Contractor may, at any time thereafter, terminate this Agreement by giving the Customer thirty (30) days prior written notice.

ECF No. [35-1] at 3. (emphasis supplied)

Section 5(a) contains the term "provided that," indicating the parties' intent that the basis of a rate increase being an increase in costs to Defendant is a condition precedent to Plaintiff paying the increased charges. Similarly, Section 5(b) states that adjustments to the rates "other than as provided in Section 5(a) hereof may be made by the Contractor "by giving" the Customer thirty (30) days prior written notice." *Id*. The plain language provides that Defendant giving Plaintiff thirty days prior written notice is a condition that must be met before Defendant can impose a Section 5(b) rate increase and is therefore properly interpreted as a condition precedent.

The Florida Supreme Court instructs that "[t]he intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs." *Lalow v. Codomo*, 101 So. 2d 390, 393 (Fla. 1958). The Court finds that when read in context, the condition precedent is set forth in unambiguous language in Section 5(a) and makes clear that the prescribed notice is a condition precedent to payment of a rate increase under Section 5(b).

Because the condition precedent set forth in Section 5(a) obligates a customer to pay an

increased rate when the increased rate is based upon increased costs to the contractor, it follows that a customer's obligation to pay an increased rate based upon anything other than an increased cost to the contractor is not triggered unless some other condition precedent exits. Section 5(b) increases are those increases to customer rates not covered by Section 5(a) and therefore a customer would have no obligation to pay a Section 5(b) increase unless triggered by language in Section 5(b) or elsewhere in the Contract. Section 5(b) expressly states what triggers such an obligation: the contractor providing thirty days prior written notice and the customer not providing written notice of an objection within fifteen days of receipt of the contractor's notice.

Plaintiff's obligation to pay a Section 5(b) rate increase is dependent on whether Defendant provided Plaintiff notice and an opportunity to object to such an increase. Because Plaintiff's obligation to pay is dependent on the notice provision, the notice provision is properly considered a condition precedent.

### ii. Whether notice provision was a material term

Defendant contends that that the timing, mode, and content of the required notice do not go to the essence of the Contract and are therefore not material terms of the Contract. ECF No. [139] at 13-16. Defendant argues that since the thirty-day notice provision was not a material term of the contract, it could not give rise to a material breach. *Id*. Plaintiff argues that the notice provision is material because it directly relates to the material term of price. ECF No. [150] at 15-16.

The notice provision in Section 5(b) required Defendant to provide Plaintiff with written notice thirty days prior to any rate increase other than a Section 5(a) rate increase. *See* ECF No. [35-1] at 3. Section 16 of the Contract governed "[a]ny notice required or permitted to be given by

Contractor or Customer to the other under the agreement." *Id*. It stated that any such notice "shall be given by either (i) personal delivery or (ii) by registered mail." *Id*.

Under Florida Law, "[t]he issue of whether an alleged breach is vital or material is reviewed as a question of fact." *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008). "An essential, or material, term is '[a] contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done.'" *U.S. Doe v. Health First, Inc.*, No. 6:14-cv-501-Orl-37DCI, 2017 WL 1929700, at *4 (M.D. Fla. May 10, 2017) (quoting *Material Term*, Black's Law Dictionary (9th ed. 2009)).

In the context of the Contract at issue, it is undisputed that price was a material term. *See* ECF No. [149] ¶ 102 ("Price was the primary factor driving Plaintiff's decision to enter the Contract"); ECF No. [158] ¶ 102. Because the Court has already determined that Section 5(b)'s notice provision was a condition precedent to Plaintiff's obligation to pay any increased rate, the Court agrees with Plaintiff that the notice provision constitutes a material term because it had the power to directly affect the material price term.

Because the Court finds that the notice provision was material to the extent that it affects the Contract's price term,[2] the Court proceeds to determine whether Defendant substantially complied with the notice provision.

### iii. Whether Defendant substantially complied

"Substantial compliance is 'the opposite of a material breach of contract.'" *Lopez v. Avatar Prop. & Cas. Ins. Co.*, 313 So. 3d 230, 235 (Fla. 5th DCA 2021) (quoting *Green Tree Servicing,*

---

[2] Although the parties briefed the issues of whether the timing, method, or content of the notice was material, the Court declines to consider whether the timing, method, or content of the notice on its own was material because the Court has already found that the notice provision is material as it relates to the price term of the Contract.

*LLC v. Milam*, 177 So. 3d 7, 14 (Fla. 2d DCA 2015)). "Substantial compliance or performance is 'that performance of a contract which, while not full performance, is so nearly equivalent to what was bargained for that it would be unreasonable to deny' the other party the benefit of the bargain." *Green Tree*, 177 So. 3d at 14 (quoting Casa *Linda Tile & Marble Installers, Inc. v. Highlands Place 1981 Ltd.*, 642 So.2d 766, 768 (Fla. 4th DCA 1994)). "Florida courts have sometimes evaluated compliance with conditions precedent by asking whether the alleged variation from the condition was material." *Id*.

Defendant argues that if the Court finds that the notice provision is a condition precedent and a material term of the Contract, the weight of the evidence that it substantially complied with the notice provision is strong enough that no reasonable jury could conclude Defendant did not substantially comply, so the Court should grant summary judgment. ECF No. [139] at 16. Plaintiff responds that the facts show that Defendant failed to provide the required notice because Plaintiff lacked actual notice of the key facts. ECF No. [150] at 19.

The undisputed evidence establishes that Defendant raised Plaintiff's rates six times between September 2016 and January 2022. ECF No. [138] ¶ 13. Each of the increases implicated Section 5(b) of the Contract. ECF No. [149] ¶ 67. Defendant contends that it provided Plaintiff written notice of the increases via monthly invoices and sent a letter in advance for the October 2019 rate increase. *Id*. ¶ 69; ECF No. [158] ¶ 69.

Plaintiff received monthly invoices for Defendant's services by regular U.S. mail indicating the amounts owed for the basic service charge and monthly disposal charge. ECF No. [138] ¶¶ 15-17. The monthly invoices do not contain messages relating to the first five rate increases imposed by Defendant after September 2016. ECF No. [149] ¶ 70. The June 25, 2021, monthly invoice stated, "[d]ue to increasing costs in materials, we will be increasing our rates

effective July 1st." *Id.* ¶ 71. It is undisputed that none of the monthly invoices: (1) provided Plaintiff thirty days' prior written notice of any of the increases, (2) cited to either Section 5(a) or Section 5(b) of the Contract, (3) were sent by registered mail, or (4) were personally delivered to Plaintiff. *Id.* ¶¶ 72-75; ECF No. [158] ¶¶ 72-75.

With regard to the letter Defendant contends it sent providing written notice of the October 2019 rate increase, it is undisputed that: (1) Defendant has no record that the letter was mailed to Plaintiff, (2) the letter did not provide thirty days' prior written notice, (3) it was not sent by registered mail to Plaintiff, and (4) it was not personally delivered to Plaintiff. ECF No. [149] ¶¶ 76-80.

It is undisputed that Defendant did not provide notice of any of the six rate increases thirty days prior to the increase being put into effect and did not provide notice by registered mail or personal delivery. As such, the Court finds that Defendant did not comply with the express terms of the Contract.

"Under Florida law, strict compliance with a notice provision is not required if one of the parties … has actual notice." *Megacenter US LLC v. Goodman Doral 88th Court LLC*, 273 So. 3d 1078, 1084 (Fla. 3d DCA 2019). The issue before the Court is therefore whether Plaintiff had either express or implied actual notice such that it would be unreasonable to deny Defendant the benefit of its bargain.

### a.   Express actual notice

Defendant argues that "no reasonable jury could reach any conclusion other than that [Plaintiff] knew enough about its rate increases to pick up the phone and call [Defendant] for any information it wanted." ECF No. [139] at 17. Defendant contends that because Plaintiff indisputably knew about rate increases when they occurred, it had "the ability to recognize when

price increases had exceeded [Defendant's] costs or inflation, signaling a 'Section 5(b) increase' requiring Section 5(b) notice." *Id*. Defendant further argues that Plaintiff "indisputably already had what it claims it needed from [Defendant] in this case – the ability to recognize when price increases had exceeded [Defendant's] costs or inflation, signaling a 'Section 5(b) increase' requiring Section 5(b) notice." *Id*. Plaintiff responds that the facts demonstrate that "Plaintiff was not in any way 'willfully ignorant' of the bases for Defendant's Increases" but "lacked readily available information as to the Section 5(b) nature of Defendant's Increases." ECF No. [150] at 20. Plaintiff points out that Defendant's argument regarding actual notice "surmises that Plaintiff – a preschool and daycare operator – had a duty to investigate and discover the internal bases of *Defendant's* rate increases and then call Defendant about them." *Id*. (emphasis in original).

Undisputed record evidence establishes that Plaintiff's payments to Defendant were not automated. ECF No. [138] ¶ 25. One of Plaintiff's managing members, Dick, made Plaintiff's payments to Defendant using Bank of America's online bill payment service which required Dick to manually enter the amount of Plaintiff's payment to Defendant. *Id*. ¶¶ 21, 26-28.

Dick testified at his deposition that he "remember[ed] wondering about why the bills were going up so much" but did not call Defendant to ask. ECF No. [138-6] at 192:14-193:6. Record evidence confirms that invoices sent to Plaintiff by Defendant contained a phone number to call either "for invoice inquiries" or "for assistance." ECF No. [138-23]. Dick conceded that he could have called Defendant if he needed more information about the charges, and that calling with questions was consistent with his standard practice for dealing with utilities and other service providers. ECF No. [138-6] at 191:7-19. It is also undisputed that Dick did not know whether Defendant's rate increases were based strictly on increases to Defendant's costs or were based on other factors. [149] ¶ 88.

16

The parties dispute whether, had Plaintiff called Defendant to object to the price increases, Defendant would have informed Plaintiff that they were Section 5(b) increases or whether Defendant trained and incentivized its customer service staff to mislead customers that called to complain about rates as to the nature of the increases and defend such increases. ECF No. [138] ¶ 64; ECF No. [149] ¶ 64.

The extent to which one of Plaintiff's other managing members, Charles, was involved in Plaintiff's decision making is also disputed. The record evidence reveals that Charles owns a fifty-one percent share in Plaintiff. ECF No. [138] ¶ 50. Charles testified that his roles in the business "are deciding on when – when we buy another location… when we by a vehicle … and otherwise, the decisions are – are made by [Dick] and Sandy." ECF No. [138-7] at 53:10-22. Charles also testified that he and Dick "talk a lot; but mostly, it's talk as opposed to decision making." *Id*. at 53:25-54:1. Charles explained that he did not review contracts for Plaintiff other than for new business purchasing and vehicles until an issue with the Contract in this case came up. *Id*. at 55:1-22. Charles expressed that he sometimes spoke with Dick about costs incurred by Plaintiff but said that the conversations on the costs were not very detailed. *Id*. at 57:14-19.

Charles testified that he was previously an attorney on a class action case filed against another waste management company, Waste Management, in which Waste Management was accused by a different plaintiff, Savannah Oaks, of raising prices in violation of the contract at issue in that case. *Id*. at 133:4-21. Charles explained that prior to filing the class action, he conducted an investigation in which he found that it was not obvious whether price increases were reflective of pass-through costs for each price increase, but at the end when he considered cumulative price increases it was obvious that the price increases were excessive. *Id*. at 141:14-142:3.

Defendant argues that by March 2017, Charles was familiar with waste collection pricing from his legal work on the case against Waste Management. ECF No. [139]. at 18. Defendant imposed multiple rate increases between October 2013 and March 2017 for a cumulative rate increase of roughly 250 percent over three-and-a-half years. *Id*. In light of Charles's familiarity with waste collection service rates and the significant cumulative rate increase Plaintiff experienced, Defendant suggests that it would have been obvious to Charles that the rate increase was above the amount of increased costs or inflation. *Id*. Defendant asserts that the knowledge of both Charles and Dick, manager-members of the Plaintiff LLC, is imputed to Plaintiff.

In support of its contention that the knowledge of both Charles and Dick are imputed on to Plaintiff, Defendant cites *Beck v. Deloitte & Touche, Deloitte, Haskins & Sells, Ernest & Young, L.L.P.*, where the Eleventh Circuit stated that "[i]n normal circumstances, the knowledge of a corporation's directors … is imputed to the corporation." 144 F.3d 732, 736 (11th Cir. 1998). Plaintiff responds that the case law is clear that "Charles' knowledge cannot be imputed to Plaintiff unless he engaged in misconduct that benefitted Plaintiff while acting on Plaintiff's behalf." ECF No. [150] at 25.

In *Beck*, the Eleventh Circuit considered whether knowledge of a corporation's director could be imputed to the corporation for purposes of calculating the statute of limitations when the corporation's director had knowledge of the defendant's alleged malpractice. *Beck* 144 F.3d at 736. The Eleventh Circuit noted that "[u]nder Florida law, the knowledge of a corporate officer whose fraud or misbehavior brings short-term gain to the corporation, or merely injures a third party, is imputed to the corporation, even if the officer's misbehavior ultimately causes the corporation's insolvency." *Id*. Another court in this district determined that "knowledge of individuals who exercise substantial control over a corporation's affairs is properly imputable to

the corporation." *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1361 (S.D. Fla. 2005) (citing *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1340 (S.D. Fla. 1999)).

Here, it is undisputed that Dick was the person who paid the invoices sent by Defendant and that he did not know whether Defendant's rate increases were based strictly on increases to Defendant's costs or were based on other factors. ECF No. [149] ¶ 88. It also undisputed that Charles did not know anything about the Contract or rate increases being imposed on Plaintiff before the middle of 2021 when Dick sent the Contract and Defendant's invoices to Charles to review. ECF No. [149] ¶ 98. Because the record evidence establishes that Charles did not exercise any control over Plaintiff paying the invoices sent by Defendant, the Court does not impute any special knowledge of waste disposal contracts and industry rates Charles might have onto Plaintiff.

Charles had no actual notice of the Section 5(b) rate increases because he had no actual knowledge of the Contract or rates being charged. Therefore, no knowledge can be imputed onto Plaintiff to establish that Plaintiff had express actual notice of the Section 5(b) rate increases. Accordingly, the Court does not find substantial compliance as a result of express actual notice.

### b.   Implied actual notice

Plaintiff and Defendant both cite to *Symons v. State, Dept. of Banking & Fin.*, for the applicable implied actual notice standard. 490 So. 2d 1322, 1324 (Fla. 1st DCA 1986).

> Implied actual notice is inferred from the fact that a person had the means of knowledge and the duty to use them but did not. It is based on the premise that a person has no right to shut his eyes or ears to avoid information and then say he had no notice; it will not suffice the law to remain willfully ignorant of a thing readily ascertainable when the means of knowledge is at hand. In order to charge a person with notice of information which might have been learned by inquiry, the circumstances must be such as should reasonably suggest inquiry. A determination of whether there are sufficient facts known to require further investigation generally is one of fact.

*Id.* (internal citations omitted).

Defendant argues that "regardless of [Plaintiff's] express actual notice the 'obviousness' of the involvement of Section 5(b) in [Defendant's] rate increases is what triggers the doctrine of implied actual notice here." ECF No. [139] at 19. Defendant contends that "Charles was suing a waste company for allegedly overcharging its commercial customers; of course it would be reasonable for him to inquire about *his own company's* waste collection rates during the calls he had 'several times a week' with his brother about the business. Accordingly he had, at the least, implied actual notice of these rates." *Id.* at 18-19 n. 6 (emphasis in original). Plaintiff responds that without notice providing an explanation of Defendant's rate increases, "Plaintiff simply had no reason to believe the increases were anything other than what they purported to be – 5(a) increases that Plaintiff had no choice but to pay". ECF No. [150] at 21.

There is a dispute of material fact as to whether Plaintiff had sufficient facts to know that further investigation was required. A reasonable trier of fact could find that Dick and Charles did not share with each other their respective knowledge about Defendant's invoices and waste collection rates. Whether Plaintiff had knowledge that the rate increases were above the amount of increased costs or inflation is therefore genuinely disputed. Because a reasonable jury could therefore conclude that Plaintiff did not have enough knowledge to reasonably suggest inquiry, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242 ("Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### iv. Whether Plaintiff incurred damages

Defendant argues that even if the Court does not grant summary judgment on the issue of material breach, it should do so because Plaintiff did not suffer contractual damages. ECF No. [139] at 19. Defendant contends that Plaintiff "can put forward no evidence that [Defendant's]

allegedly inadequate disclosures were a 'but-for' cause of any injury." *Id*. at 21. Plaintiff responds that Defendant materially breached the notice requirement which excuses any requirement of Plaintiff to pay the rate increases imposed, but Plaintiff did pay the rate increases. ECF No. [150] at 28. Plaintiff argues that the increases it paid despite the breach are the damages it seeks to recover in this case.

The Court agrees with Defendant's statement of Plaintiff's burden of proof with regard to damages. Plaintiff must establish that the inadequate disclosures were the but-for cause of it paying the rate increases imposed. Section 5(b) permits Plaintiff to do either of two things after receiving notice of a Section 5(b) increase. ECF No. [35-1] at 3. Plaintiff could either object to the rate increase within fifteen days of receiving the notice or choose to pay the increased rate. *Id*. Plaintiff must therefore demonstrate that it would have chosen to object rather than pay the increased rate if it received the contractually required notice. In other words, Plaintiff must show that it was prejudiced by the lack of notice to demonstrate that it incurred damages. *See Gorel v. Bank of New York Mellon*, 165 So. 3d 44, 47 (Fla. 5th DCA 2015) ("Absent some prejudice, the breach of a condition precedent does not constitute a defense to the enforcement of an otherwise valid contract.").

The parties dispute whether a lack of time or lack of proper notice motivated Dick not to call to question the basis for the increases. When asked whether he was free to call Defendant if he had a question, Dick answered that he had "a lot on [his] plate" and that "a lot of the times when [he] was doing the billing that [he] did not have a lot of time to do the billing. And then … [he] would forget before the next time and just pay the bill because [he] had to move on and do – do other jobs." ECF No. [138-6] at 193:7-14. Dick also testified that "if somebody had sent [him] registered mail or if somebody had came [sic] in person to talk to [him] about an increase, those

are things that would have triggered" that this was something he "need[ed] to check out, and [he] would have … if [he] had been properly served notice according to the [C]ontract." ECF No. [138-6] at 175:4-9. The record evidence therefore does not affirmatively establish whether, if provided proper notice, Plaintiff would have objected to the rate increases it was assessed. Therefore, there is a dispute of material fact about whether Defendant's breach of the notice provision was the but-for cause of Plaintiff's damages.

Summary judgment is not appropriate on the claim for breach of Contract. Viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact regarding whether there was a material breach and whether Plaintiff incurred damages because of that breach.

## B. Affirmative Defenses

Defendant argues that because Plaintiff paid its bills for more than eight years without objecting to rate increases, it is entitled to judgment on three affirmative defenses: (1) voluntary payment, (2) waiver, and (3) failure to mitigate damages. ECF No. [139] at 22. Plaintiff responds that Defendant cannot support its affirmative defenses because all require full knowledge of the facts and circumstances, which Plaintiff did not have. ECF No. [150] at 28.

### i. Voluntary payment

"'The voluntary payment doctrine provides that where one makes a payment of any sum under a claim of right with knowledge of the facts, such a payment is voluntary and cannot be recovered.'" *Brink v. Raymond James & Associates, Inc.*, 341 F. Supp. 3d 1314, 1319 (S.D. Fla. 2018) (quoting *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2d DCA 2001)). "'It does not matter that the payment may have been made upon a mistaken belief as to the enforceability of the demand, or liability under the law, as long as payment is made with

knowledge of the factual circumstances.'" *Id*. (quoting *Hassen v. Mediaone of Greater Fla., Inc.*, 751 So.2d 1289, 1290 (Fla. 1st DCA 2000)). However, where "a plaintiff makes the allegedly excessive payments to a defendant without the knowledge of the factual circumstances rendering them excessive or illegal, the voluntary payment affirmative defense does not apply." *Id*. at 1320.

Defendant argues Plaintiff's payments were voluntary and Plaintiff "cannot overcome the voluntary payment defense because [it] made an erroneous assumption for four years that could have been easily clarified… by… making a call to the phone number provided on his bill." ECF No. [139] at 26 (quoting *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 823 (7th Cir. 2010)). Plaintiff responds that the "full knowledge" required for the voluntary payment defense to apply is entirely absent. ECF No. [150] at 31.

The Court finds that the dispute of material facts relevant to whether Plaintiff had implied actual notice is applicable here as well. Whether sufficient facts were known to require Plaintiff's investigation is in dispute. Therefore, there is a dispute over whether Plaintiff's payments were made with knowledge of the factual circumstances. Accordingly, the Court cannot grant summary judgment in favor of Defendant's voluntary payment affirmative defense.

Plaintiff also argues that Fla. Stat. § 725.04 negates the application of the voluntary payment doctrine where "the parties dispute payments that allegedly exceed or did not fall under terms or categories expressed in the parties' contract." *Brink*, 341 F. Supp. 3d at 1322. Because the Court has already determined that summary judgment is not appropriate on Defendant's affirmative defense of voluntary waiver, it does not proceed to consider the applicability of Fla. Stat. § 725.04.

### ii. Waiver

Waiver "'is the intentional relinquishment or abandonment of a known right.'" *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "In Florida, implied waiver of a contractual right requires conduct which implies the voluntary and intentional relinquishment of a known right." *GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1142 (11th Cir. 2019) (internal quotation marks omitted).

The Court has already determined that Plaintiff did not have express actual notice and that there is a dispute of material fact as to whether Plaintiff had actual implied notice of its right to object to rate increases under the Contract. As Plaintiff's knowledge of its right to object is in dispute, the Court cannot find as a matter of law that Plaintiff voluntarily and intentionally relinquished a known right. Defendant's motion for judgment on its affirmative defense of waiver is therefore denied.

### iii. Failure to Mitigate Damages

"In an action on a contract, if a plaintiff [by reasonable exertion of care] can prevent damages resulting to him by reason of the defendant's wrongful acts, it is his duty to do so and, so far as he can thus prevent them, he cannot recover therefor." *Winter v. Am. Auto. Ass'n*, 149 So. 2d 386, 387 (Fla. 3d DCA 1963). "A party wronged by a breach of contract, in other words, has an affirmative obligation to take reasonable steps to avoid, or minimize, loss, but is not required to enter ameliorating transactions that are risky." *Tampa Pipeline Transp. Co. v. Chase Manhattan Serv. Corp.*, 928 F. Supp. 1568, 1579 (M.D. Fla. 1995), *aff'd sub nom. Tampa Pipeline v. Chase Manhattan*, 87 F.3d 1329 (11th Cir. 1996).

Defendant argues that "[t]he duty to mitigate damages required [Plaintiff] to inquire and exercise its contractual right to object to a rate increase when it believed there had been an alleged

breach." ECF No. [139] at 29. That argument reveals that Plaintiff's knowledge of a breach is a prerequisite to its duty to mitigate damages. The Court has already determined that there is a genuine dispute of material fact regarding whether sufficient facts were known to Plaintiff to find that it should have investigated and to charge it with implied actual notice.

Because a dispute of material fact exists the Court will not grant judgment on the affirmative defense of failure to mitigate damages.

### C.  Count II – Breach of Duty of Good Faith and Fair Dealing

"A breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches to the performance of a specific contractual obligation." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The implied duty of good faith must therefore "relate to the performance of an express term of the contract ... [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998); *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)). Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am.*, 710 So. 2d at 575.

Defendant contends that summary judgment must be granted on Plaintiff's claim for breach of the duty of good faith and fair dealing because it requires the breach of an express term of the Contract. ECF No. [139] at 30. Plaintiff responds that Defendant "is bound by the duty of good faith and fair dealing to exercise its discretion over the content of Section 5(b) increase notices in a commercially reasonable manner that comports with the language of the Contract and the parties' objectively reasonable expectations and not in a manner which only serves its self-interests." ECF No. [150] at 9.

As the Court noted in its Order on Motion to Dismiss, "because Count II is based on the alleged failure to provide adequate notice and the contention that Plaintiff could not exercise its right to object, Plaintiff does not attempt to vary the express terms of the Contract through Count II." ECF No. [65]. Moreover, the Court has already determined that summary judgment is not appropriate on Plaintiff's claim for breach of contract and Defendant is not entitled to judgment on its affirmative defenses because material facts are in dispute.

The only issue remaining is whether a reasonable trier of fact could find that Defendant breached its duty of good faith and fair dealing by failing to provide notice of its Section 5(b) rate increases in a commercially reasonable manner. Defendant contends that "[e]ven if a good faith and fair dealing claim could theoretically arise out of the notice provision of the [Contract], no reasonable jury could find that [Defendant] treated [Plaintiff] in bad faith." ECF No. [139] at 31. Plaintiff responds that "the facts provide ample reason for a jury to find that the notices selected by Defendant violated 'the reasonable expectations of the contracting parties.'" ECF No. [150] at 9-10.

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing which protects 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1314 (S.D. Fla. 2014) (quoting *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So.3d 541, 548 (Fla. 2012)). The covenant of good faith and fair dealing "is implied as a gap-filling default rule where the terms of the contract vest a party with substantial discretion, requiring that party to act in a commercially reasonable manner and limiting its ability to act capriciously to contravene the reasonable expectations of the contract counterparty." *Id*.

Case No. 21-cv-62123-BLOOM/Valle

In support of its position that its notices were reasonable Defendant cites only to a 1935 case in which the Florida Supreme Court determined that

> one who has either actual or constructive information and notice sufficient to put him on inquiry is bound, for his own protection, to make that inquiry which such information or notice appears to direct should be made, and, if he disregards that information or notice which is sufficient to put him on inquiry and fails to inquire and to learn that which he might reasonably be expected to learn upon making such inquiry, then he must suffer the consequence of his neglect.

*Sickler v. Melbourne State Bank*, 159 So. 678, 679 (Fla. 1935). Defendant again rehashes the relevant record evidence that its invoices provided a phone number for inquiries should further information be needed and contends that Plaintiff need only have called to find out everything it needed to know. But the Court has already concluded that there is a dispute of material fact as to whether Plaintiff had sufficient notice or enough facts to put it on inquiry and impose an obligation that it call or otherwise inquire. Defendant has therefore not met its burden on summary judgment of demonstrating that there is no dispute of material fact over whether the notice it provided met Plaintiff's reasonable expectations in light of the express terms of Section 5(b) of the Contract.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, **ECF No. [139]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 5, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Case No. 21-cv-62123-BLOOM/Valle