**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-62123-BLOOM/Valle**

SUNSHINE CHILDREN'S
LEARNING CENTER, LLC,
*on behalf of itself and all others similarly situated*

   Plaintiff,

v.

WASTE CONNECTIONS OF FLORIDA, INC.,

   Defendant.

_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION

  **THIS CAUSE** is before the Court upon Plaintiff Sunshine Children's Learning Center, LLC's Motion for Class Certification, ECF No. [132] ("Motion"). Defendant Waste Connections of Florida, Inc. filed a Response in Opposition, ECF No. [137], to which Plaintiff filed a Reply, ECF No. [148] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

## I. BACKGROUND

  Plaintiff filed its First Amended Complaint ("Complaint") on November 17, 2021, asserting two counts against Defendant: breach of contract ("Count I"); and breach of the covenant of good faith and fair dealing ("Count II"). *See generally* ECF No. [35]. The basis for Plaintiff's claims against Defendant is that Defendant increased its rates in breach of the Parties' contract and in breach of the covenant of good faith and fair dealing. *See id.* The contract enumerates two categories of rate increases, "Section 5(a)" and "Section 5(b)":

  5) Rate Adjustments.

(a) Contractor may increase the rates and/or charges set out on the front of this Agreement and Customer agrees to pay the increased charges and/or rates provided that such increased charges and/or rates are base [*sic*] upon increased costs to Contractor including as a result of increases in any one or more of the following: disposal facility costs, landfill costs (including due to recycling costs or otherwise), fuel costs or surcharges, transportation costs, increases in fees or taxes imposed by local, state or federal governments and costs of regulatory compliance. "Landfill costs" means and includes all costs of disposal, however and whenever incurred by Contractor in respect of [*sic*] the disposal of Waste Materials collected from Customer. Without limiting the generality of the foregoing, disposal costs shall include the costs of disposal incurred by Contractor may [*sic*] also increase the rates and/or charges annually to reflect increases in the Consumer Price Index.

(b) Adjustments to the rates and/or charges set out on the front of this Agreement other than as provided in Section 5 (a) hereof may be made by the Contractor by giving the Customer thirty (30) days prior written notice. Such rate adjustment will be effective on the date specified in the Contractors' notice unless the Customer gives written notice that it objects to the proposed adjustment within 15 days of receipt of the Contractor's notice. If the Customer gives written notice of objection pursuant to this subsection (b), this Agreement shall continue at the previous rate, but the Contractor may, at any time thereafter, terminate this Agreement by giving the Customer thirty (30) days prior written notice.

ECF No. [35] ¶ 26; *see also* ECF No. [35-1] at 3. Plaintiff also asserts class representation allegations. *See* ECF No. [35] ¶¶ 44-53.

On January 5, 2023, Plaintiff filed the instant Motion seeking class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). *See generally* ECF No. [132]. Plaintiff includes the following class definition:

The proposed Class is defined as follows:

Any commercial customer of Waste Connections of Florida, Inc., that – from September 9, 2016 through December 31, 2021 ("the Class Period") – was governed by a "Contract-At-Issue"[1] and assessed a periodic increase to its basic service, monthly disposal, and/or monthly charge.

Excluded from the Class are Defendant, its parents and affiliates; all customers who make a timely election to be excluded; and all customers in which the judges

---

[1] The term "Contract-At-Issue" refers collectively to the ten versions of Defendant's contracts designated by Plaintiff as WSI 1-5, Progressive 1-4, or WC Old. ECF No. [132-1].

assigned to this litigation and/or their immediate family members hold an ownership interest.

*Id*. at 10. Plaintiff requests that, for management purposes, the Court certify three subclasses to account for the different contract forms. Plaintiff also moves to be appointed class representative and for its counsel, Zebersky, Payne, Shaw, Lewenz, LLP and Webb, Klase & Lemond, LLC ("WK&L"), to be appointed as class counsel pursuant to Fed. R. Civ. P. 23(g). *Id*.

Defendant responds that the class should not be certified because Plaintiff seeks to stand in for thousands of commercial customers with differing contracts, circumstances, and costs that cannot be generalized. Defendant argues that Plaintiff has failed to satisfy the requirements of Rule 23, and its Motion must be denied.

## II.   LEGAL STANDARD

District courts have broad discretion in deciding whether to certify a class. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class action, the putative class must satisfy "the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012)); *see also Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b).")(quoting *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997)). "Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega v. T-Mobile USA, Inc.,* 564 F.3d

3

1256, 1265 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187-88 (11th Cir. 2003)) (internal quotation marks omitted). Next, under Rule 23(b)(3), class certification is appropriate if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *see also Rutstein*, 211 F.3d at 1233. The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis in original). "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega,* 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)).

## III.   DISCUSSION

### A.  Clearly Defined and Ascertainable

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 684 (S.D. Fla. 2014) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (internal citation omitted). "A court should deny class certification where the class definitions are overly broad, amorphous, and vague." *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262 (S.D. Fla. 2003). "But membership can be capable of determination without being capable of convenient determination. Administrative feasibility is not an inherent aspect of ascertainability." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021).[2] "If a plaintiff carries its burden on the above prerequisites, a plaintiff must, then, meet the requirements of Federal Rule of Civil Procedure 23." *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.,* 341 F.R.D. 636, 642 (S.D. Fla. 2022).

Plaintiff argues that it has adduced sufficient evidence to meet the requisite standard for ascertainability. "A customer is a Class Member if Defendant's records show three objective criteria during the Class period, namely the customer was: (1) a commercial customer (i.e., not residential or roll off); (2) governed by a Contract-At-Issue; and (3) assessed at least one periodic increase to one of the Charges-At-Issue." ECF No. [132] at 30. Defendant responds that Plaintiff's proposed class is not ascertainable because it includes many unharmed customers and is thus

---

[2] "If a district court reaches Rule 23(b), and the action involves a proposed Rule 23(b)(3) class, it may consider administrative feasibility as part of the manageability criterion of Rule 23(b)(3)(D)." *Cherry*, 986 F.3d at 1304.

overly broad. Specifically, Defendant criticizes the proposed class because it does not require a customer to have actually paid an assessed periodic rate increase and does not consider variations in notice requirements among class members' contracts or the possibility that, for some putatitve class members, rate increases were actually Section 5(a) increases which required no notice. Defendant also argues that a significant portion of the proposed class is subject to arbitration and class action waiver agreements.

Plaintiff argues that ascertaining the first and third criteria for class membership is a programmatic exercise, and the second criteria can be objectively determined by manual review of each potential class member's contract and billing data. Plaintiff provides the Declaration of its attorney, Matthew C. Klase ("Klase"), who describes in greater detail how class members will be ascertained. ECF No. [132-8]. Plaintiff also submits the Declaration of its expert statistician, Dr. Jamie Baldwin ("Baldwin"), who created a statistical sampling of Defendant's customers so their files could be analyzed to determine whether the criteria was satisfied for inclusion in the Class, ECF No. [132-9] at 7-9. Although Plaintiff cites to *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 455-56 (2016), in support of a its contention that statistical sampling is generally accepted in class actions as "a means to establish or defend against liability[,]" Plaintiff does not cite an analogous case to support its contention that its proposed class is ascertainable and clearly defined. Nor does Plaintiff provide case law or attempt to distinguish the case law cited by Defendant for the proposition that the proposed class is overbroad because it includes uninjured customers.

Instead, Plaintiff argues that all class members were injured and cites *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds* for the proposition that the Court should not "engage in free-ranging merits inquiries at the certification stage." 568 U.S. 455, 466 (2013). Plaintiff is correct that "the mere presence of uninjured class members does not necessarily preclude class

certification." *Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1284 (S.D. Fla. 2022). However, "[i]f many or most of the putative class members could not show that they suffered an injury fairly traceable to the defendant's misconduct, then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether and how to certify a class." *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019).

In support of its contention that the proposed class is overbroad because it includes uninjured members, Defendant cites two products liability cases: *Ohio State Troopers Ass'n, Inc. v. Point Blank Enterprises, Inc.*, 481 F. Supp. 3d 1258, 1274-76 (S.D. Fla. 2020), *aff'd*, No. 20-13588, 2021 WL 4427772 (11th Cir. Sept. 27, 2021) and *Simmons*, 592 F. Supp. 3d at 1284. In each of those cases, courts in this district rejected proposed class definitions as overbroad and not clearly ascertainable because the proposed class definitions included members who experienced defective products and those that did not. *Ohio State Troopers*, 481 F. Supp. 3d at 1276; *Simmons*, 592 F. Supp. 3d at 1285.

The same analysis is applicable here. Plaintiff's proposed class includes all commercial customers governed by a Contract-At-Issue who were assessed at least one periodic rate increase. To the extent that there are members of the proposed class who did not actually pay any assessed periodic increases, they are similar to the potential class members in *Ohio State Troopers* and *Simmons* who had purchased a product known to exhibit defects but who did not experiencethe defect themselves.

Defendant cites to an attached a spreadsheet titled "Miami Hauling Customer Issue Calls Regarding Rates," which includes records of customers continuing to pay the prior rate after a rate increase, exercising their rights to terminate their contract, or otherwise indicating a negotiation of a rate rollback. ECF No. [137-72] at 12-34. Defendant also refers to the Declaration of Edward L.

Apuzzi ("Apuzzi"), its waste industry expert. However, Apuzzi provides no statistical analysis to aid the Court's determination of how large a portion of the potential class did not pay a rate increase and were not harmed. *See id* at 2-10.

Defendant provides statistical evidence suggesting that "almost *half* of the Contracts-At-Issue . . . that [Plaintiff] identified incorporate the class action waiver in [Defendant's] online pricing policy" and that roughly six percent of the customers with Contracts-At-Issue in the sample set entered subsequent contracts requiring arbitration of all disputes. ECF No. [137] at 48 (emphasis in original). In *Herman v. Seaworld Parks & Entm't, Inc.*, the court considered whether some potential class members being bound by arbitration clauses and class action waivers rendered a proposed class unascertainable. 320 F.R.D. 271, 288-89 (M.D. Fla. 2017). That court held: "that some of the class members claims may be affected by arbitration agreements does not make class certification inappropriate." *Id*. (internal quotation marks and citation omitted). The *Herman* court "reserve[d] the right to consider creating a subclass or decertifying a portion of the class at a later time, if necessary." *Id*. at 289. This Court reached a similar conclusion, finding that the issue of arbitration clauses in some putative class member's agreements was best "resolved by creating a subclass of loan agreement holders whose contracts contain arbitration provisions rather than denying certification." *Wright v. Greensky Mgmt. Co., LLC*, No. 20-62441, 2022 WL 17250331, at *5 (S.D. Fla. Nov. 28, 2022). Here too, the Court finds that Defendant's contention that some class members may be affected by arbitration or class action waiver agreements does not preclude certification. Although Plaintiff has not requested subclasses for those bound by arbitration and class-waiver provisions,[3] the Court reserves its right to create a subclass or decertify certain class

---

[3] Plaintiff did request that the Court certify three subclasses consisting of members bound by designated Contracts-At-Issue for management purposes. *See* ECF No. [132] at 10 n. 1. The three proposed subclasses are composed of

members at a later stage. That leaves the Court to consider only the unknown percentage of commercial customers who fall within the class definition who were not in fact injured by Defendant.

In *Cordoba*, the Eleventh Circuit explained that "there is a meaningful difference between a class with a few members who might not have suffered an injury traceable to the defendants and a class with potentially many more, even a majority, who do not have Article III standing." *Cordoba*, 942 F.3d at 1277. In that case, like here, the record did not reveal "how many members of the putative class have standing to sue." *Id*. The Eleventh Circuit held as follows:

> We do not hold today that a court is required to ensure that the class definition does not include <u>any</u> individuals who do not have standing before certifying a class . . . . Rather, *we only hold that in this case the district court must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case*, when it appears that a large portion of the class does not have standing, as it seems at first blush here, and making that determination for these members of the class will require individualized inquiries.

*Id*. at 1276-77 (italics added; underline in original). As emphasized, the Court need not determine whether there are potentially uninjured class members who therefore lack standing at this stage. Rather, the Court must determine whether the issue of standing for putative class members will require individualized inquiries that predominate over the common issues in this case. For the reasons discussed below, in examining commonality and predominance, the Court concludes that Plaintiff's proposed class is not clearly defined and ascertainable.

---

groupings of specific form contracts that together make up the Contracts-At-Issue, but do not clearly delineate whether some contain the class action waiver or arbitration provisions at issue here. *See* ECF No. [132-2].

**B. Rule 23(a)**

Before turning to the issue of predominance, the Court addresses Rule 23(a). "Under Rule 23(a), every putative class *first* must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega*, 564 F.3d at 1265. (emphasis added)).

**i. Numerosity**

The first prong of Rule 23(a) requires a plaintiff to demonstrate that the class is "so numerous that joinder of all members is impracticable." *Ruderman v. Washington Nat'l Ins. Co.*, 263 F.R.D. 670, 678 (S.D. Fla. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). "The focus of the numerosity inquiry is not whether the number of proposed class members is 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Id.* at 678-79 (quoting *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986)). Generally, less than twenty-one class members is inadequate to satisfy the numerosity requirement, but more than forty is adequate. *Id.* (quoting *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003)).

Plaintiff argues that based on its analysis of sample files, Baldwin has estimated with a 95% confidence interval that the number of class members is 21,198. Plaintiff contends that individual joinder is therefore impracticable and the numerosity requirement is satisfied. Defendant responds that because the proposed class is not ascertainable, Plaintiff has not established numerosity. Defendant argues the use of statistical evidence to support a finding of a sufficiently numerous class is not appropriate where there has not been a showing that all class members have actually been injured and some putative class members are subject to arbitration or class action waivers.

As an initial matter, the Court has already concluded that it will not exclude putative class members subject to arbitration or class action waivers at this stage, but reserves its right to create

a subclass or decertify certain class members at a later stage. Therefore, those putative class members subject to arbitration and or class action waiver agreements are included for the purposes of determining numerosity.

The Eleventh Circuit has held that "a plaintiff need not show the precise number of members in the class." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). "Nevertheless, a plaintiff still bears the burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (emphasis in original).

The Court recognizes that Defendant extends, to the requirement of numerosity, its challenges as to whether the class is clearly defined and ascertainable because the defined class may include members who did not suffer injury. However, the decisions in *Simmons* and *Ohio State Troopers* instruct that where the proposed classes were not adequately defined, Rule 23(a)'s numerosity requirement is deemed satisfied based on the number of members in the classes proposed by the plaintiffs. *See Ohio State Troopers*, 481 F. Supp. 3d at 1278; *Simmons*, 592 F. Supp. 3d at 1286. As such, the Court assesses numerosity based on the total number of members in the proposed class. Plaintiff asserts that the total number of class members is 21,198.

Plaintiff has met its burden of demonstrating numerosity by providing the expert report of Baldwin in support of its Motion. Baldwin determined that the sample of customers "provided a reliable basis from which to estimate the expected number of eligible class members among [Defendant]'s commercial, non-temporary roll-off customers." ECF No. [132-9] at 10. From that sample, Baldwin extrapolated with a 95% confidence interval that "[t]he estimated number of

[Defendant's] commercial, non-temporary roll-off customers that will qualify for class membership is 21,337." *Id*.

Because Plaintiff has made a showing that its proposed class consists of more than 20,000 individuals, which is sufficiently numerous to render joinder of all members impracticable, the numerosity requirement is satisfied.

### ii. Commonality

The commonality requirement of Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof.") (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). In *Wal–Mart Stores, Inc. v. Dukes*, the Supreme Court held that commonality requires that the claim of the putative class "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (citation and internal quotation marks omitted; emphasis in original).

Plaintiff asserts that the commonality requirement is satisfied because Plaintiff and all class members were commercial customers of Defendant subject to preprinted contracts containing materially similar rate adjustment provisions. Plaintiff contends that the interpretation of the materially similar preprinted contracts is a question of law common to the entire class. Plaintiff further argues that whether Defendant's notice of rate adjustments in the form of invoice notices

12

breached the express requirements of those materially similar contracts, the Contracts-At-Issue, is a common question, as is the measure of damages. Defendant does not specifically address the issue of commonality but instead focuses its argument on whether individual issues predominate under Rule 23(b)(3). Defendant contends that this is not a case involving standardized uniform contracts and the varied contract terms prevent class-wide determination of the claims. Defendant argues that adequacy of notice, materiality of any breach, and the extent of alleged damages are individual issues not capable of class-wide resolution.

A review of the sample Contracts-At-Issue reveals that many include handwritten notes governing caps on rate increases or terms prohibiting rate increases within the first 12 months of some customers' contracts. *See generally* ECF Nos. [137-2]-[137-11]. All of the Contracts-At-Issue require some form of notice in the event of a Section 5(b) rate increase regardless of the handwritten notes. *See id*; ECF No. [132-1]. Only the method and timing of the notice required vary to some extent between the various proposed subclasses. Accordingly, whether the notice provision is a condition precedent and material term and whether Defendant breached the express notice provision in the Contracts-At-Issue are common questions to all class members.

Plaintiff cites *Verbal v. Tiva Healthcare, Inc.*, No. 20-60695, 2021 WL 9527858 (S.D. Fla. Aug. 19, 2021) in support. There, a court in this district considered whether class certification was appropriate for a proposed class of certified registered nurse anesthetists whose contracts were unilaterally canceled without prior notice in March 2020 "as the Covid-19 pandemic was pushing the nation into quarantine." *Id*. at *1. The *Verbal* court considered whether there were questions of law or fact common to all class members. *Id*. at *3. The defendants in that case argued that there was not commonality because class members' contracts have different notice periods, certain class members entered into subsequent contracts, and it was unclear whether the contracts dictate choice

of law or whether state statutes or common law principles apply. *Id*. at 5. The *Verbal* court determined that the resolution of the lawsuit hinged on whether there was an agreement that defendants canceled without proper notice and whether such cancellation was justified by a once-in-a-century pandemic and that "these questions are common to all the class members." *Id*. at \*6. The court therefore found that the plaintiff had satisfied the commonality element. *Id*.

Here by contrast, Defendant argues that there is not commonality because to determine whether it breached the Contracts-At-Issue "by failing to provide adequate notice of rate increases, a factfinder would have to examine each contract's requirements, each case of notice, and each customer's reasonable commercial expectations." ECF No. [137] at 31. Defendant cites an analogous case in which a court in this district considered a motion to certify a class of customers who alleged that they were overcharged for carpet and padding when they were charged for the quoted measured area rather than the actual area to be carpeted. *Marino v. Home Depot U.S.A., Inc.*, 245 F.R.D. 729, 731-32 (S.D. Fla. 2007). The *Marino* court noted that "a jury would have to make individualized findings as to whether the measured difference for every class member was a material breach of the contract." *Id*. at 734. The court therefore found that the proposed class could not be certified because certification "would lead to a situation where the trier of fact had to make individualized determinations as to materiality for every class member." *Id*.

Here too, the question of material breach must be determined individually for each class member. In its Order on Defendant's Motion for Summary Judgment, ECF No. [176], the Court explained that whether there was a material breach of the notice provision depends upon whether Plaintiff had either express or implied actual notice[4] such that it would be unreasonable to deny

---

[4] "'Actual notice' is also said to be of two kinds: (1) Express, which includes what might be called direct information; and (2) implied, which is said to include notice inferred from the fact that the person had means of knowledge, which

Defendant the benefit of its bargain. "Under Florida law, strict compliance with a notice provision is not required if one of the parties . . . has actual notice." *Megacenter US LLC v. Goodman Doral 88th Court LLC*, 273 So. 3d 1078, 1084 (Fla. 3d DCA 2019); *see also Diaz v. Wells Fargo Bank, N.A.*, 189 So. 3d 279, 282 (Fla. 5th DCA 2016) ("While Appellants are correct that the notice requirements in paragraph twenty-two of the mortgage are conditions precedent to Bank filing the present foreclosure suit, substantial compliance, not strict compliance, with this condition precedent is all that is required.").

The Court therefore finds that whether the notice provision is a condition precedent and material term and whether Defendant breached the express notice provision in the Contracts-At-Issue will not generate common answers and are therefore insufficient to find commonality. As the Supreme Court explained, "any competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349 (internal quotation marks and citation omitted). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Id.* at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982).

As Plaintiff states in its Motion, "[i]n a contract-related action like this, the common question is whether the defendant's course of conduct breached a duty arising out of the contractual relationship." ECF No. [132] at 35. The Court determined that whether there was a material breach depends on whether Plaintiff or any putative class member had either express or implied actual notice. That determination of whether Defendant materially breached the notice requirement in the Contracts-At-Issue will resolve an issue central to the contract claim Plaintiff asserted on behalf of the class. *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1238 (11th Cir. 2016) ("A

---

it was his duty to use and which he did not use, or, as it is sometimes called, 'implied actual notice.'" *Sapp v. Warner*, 141 So. 124, 127 (Fla. 1932)

question is common when 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" (quoting *Dukes*, 564 U.S. at 350)). Defendant points out that "customers frequently ask about, dispute, and negotiate their pricing after receiving a rate increase." ECF No. [137] at 33. If a customer did ask about a rate increase, the resulting conversation may have provided that putative class member express actual notice. Moreover, the Court has already determined that although Plaintiff did not have express actual notice, there remains a genuine dispute of material fact whether it had implied actual notice. ECF No. [176] at 20. The factual issue of actual notice must be resolved individually for each class member. As such., the central question of material breach of the Contracts-At-Issue is not one capable of classwide resolution.

Plaintiff also contends that whether Defendant breached its "duty of good faith is a common question of fact." ECF No. [132] at 36. But, as the Court explained in its Order on Defendant's Motion for Summary Judgment, the issue of whether Defendant met Plaintiff's reasonable expectations for Section 5(b) notice to satisfy the covenant of good faith and fair dealing is a factual question dependent on whether Plaintiff had actual notice. ECF No. [176] at 27. Therefore, the same analysis that applies to the commonality of the contract claim applies to the duty of good faith and fair dealing claim. Accordingly, the Court finds that the common questions capable of class-wide answers will not resolve the claims of breach of either the Contracts-At-Issue or duty of good faith claims, so Rule 23(a)'s commonality requirement is not satisfied.

### iii.        Typicality

The typicality prong of Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

"[T]he typicality requirement is permissive; representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft*, 275 F.R.D. 666, 674 (S.D. Fla. 2011) (citing *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003)). To demonstrate typicality, the plaintiff must generally show that a "sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citing *Washington*, 959 F.2d at 1569 n.8). Stated differently, "[t]he claim of a class representative is typical if 'the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Williams*, 568 F.3d at 1356-57 (quoting *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984)). "If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of the proposed members' claims." *Conigliaro v. Norwegian Cruise Line Ltd*., No. 05-21584-CIV, 2006 WL 7346844, at *7 (S.D. Fla. Sept. 1, 2006) (quoting *Brooks v. S. Bell Tel. & Tel. Co*., 133 F.R.D. 54, 58 (S.D. Fla. 1990)).

Plaintiff argues that the claims of Plaintiff and the class arise from the same pattern and practice of Defendant and are based on the same legal theory leading to the same alleged determinable injury. Plaintiff contends that the typicality requirement is therefore met because Plaintiff shares a claim for damages with other class members based on the same legal theories. Defendant responds that Plaintiff is not typical of the proposed class because its contract with Defendant and the circumstances of the resulting contractual relationship are markedly different from other proposed class members.

17

Despite some differences in terms between the form contracts that make up the Contracts-At-Issue, the Court agrees with Plaintiff that the same claims are common to Plaintiff and all class members. Furthermore, Plaintiff's Trial Plan for Class Claims, ECF No. [132-2], reveals that all class members' claims will be advanced under the same legal theory. "Although this legal theory may ultimately not be sustained by the evidence, it is typical of the class" and therefore meets the relatively low bar necessary to establish typicality. *See Williams*, 568 F.3d at 1357.

### iv. Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy-of-representation requirement 'encompasses two separate inquiries; (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001) ("Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class; and (2) class counsel possesses the competence to undertake the litigation."); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987). ("The inquiry into whether named plaintiffs will represent the potential class with sufficient vigor to satisfy the adequacy requirement of Rule 23(a)(4) most often has been described to involve questions of whether plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class.").

Plaintiff contends that it is tenaciously litigating this case for the benefit of all class members and that class counsel is well-versed in complex class and federal litigation and ready,

willing, and able to devote the resources necessary to litigate this case. Defendant responds that Plaintiff's majority owner and managing member Wayne Charles's relationship and financial ties to proposed class counsel WK&L renders Plaintiff an inadequate class representative. Specifically, Defendant argues that WK&L and its attorneys have represented Charles's companies in over twenty lawsuits for which Charles has paid them several million dollars. Defendant further contends that Charles has served as co-counsel with WK&L in three cases and in the most recent case he received thirty percent of the $1.5 million fee award.

Defendant cites this Court's decision in *Alhassid v. Bank of Am., N.A.*, for the proposition that "an individual is an improper representative where there is a possibility that he will be more interested in maximizing the 'return' to his attorney than in aggressively presenting the proposed class action." 307 F.R.D. 684, 700 (S.D. Fla. 2015) (quoting *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir.1984)). In that case, the Court determined that "[b]ecause [plaintiff] has demonstrated only the bare minimum of knowledge and sophistication regarding the issues in this case; [p]laintiffs' counsel are inexperienced in class action litigation; and [p]laintiffs have provided the Court with no assurances of a lack of financial interdependence between [plaintiff] and her children/counsel . . . the Court finds that the adequacy of representation requirement has not been met here." *Id*.

Defendant also cites to *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003). There, the class representative and proposed class counsel had a longstanding personal friendship and the class representative had formerly served as the proposed class counsel's stockbroker. *Id*. The Eleventh Circuit held that "because the personal *and* financial ties between [the class representative] and [proposed class counsel] are very close, and because [proposed class

counsel's] recovery will vastly exceed what any of the class members will receive . . . [the proposed class representative] cannot fairly and adequately represent the class." *Id.* (emphasis in original).

Plaintiff successfully distinguishes the instant facts from those in which courts, including this Court, have found a plaintiff to be an inadequate class representative due to their relationship with proposed class counsel. It is undisputed that one of Plaintiff's managing members and its majority owner, Wayne Charles ("Charles"), has a professional relationship with the proposed class counsel, WK&L. Companies partially owned by Charles retained Adam Webb ("Webb") for legal representation in multiple matters. The representation for the most recent matter ended in July of 2018. Webb is a named partner of WK&L. Charles has also referred contingency cases to WK&L on three occasions, served as co-counsel in one of the three cases, and received thirty percent of the fees earned when each of the matters was successfully resolved. The last case Charles referred to WK&L resolved in October of 2019, and he has not thereafter served as co-counsel or referred any cases to WK&L.

Plaintiff asserts that WK&L does not provide legal representation to any affiliate of Charles besides Plaintiff.  Relevant to the Court's analysis, Charles executed a Declaration in support of the Motion in which he states that he "will not share in any attorneys' fees that result from this case." ECF No. [148-2] ¶ 13. The Declaration also includes Charles's assurance that he "will not allow [his] prior working relationship with [Webb] or WK&L to in any way impede [Plaintiff's] duties to the class in this regard." *Id.* ¶ 30.

Defendant has provided no evidence that Charles had an economic interest in WK&L other than to the extent he was entitled to share in profits for those cases which he referred, and Charles gave specific assurances in his Declaration that he will not let his prior working relationship with WK&L impede his duties to the class. Defendant therefore has not shown the close personal

relationship similar to the one delonstrated in *London* or where the class representative provides no assurances of financial independence as in *Alhassid*. The Court therefore finds no substantial conflict of interest exists regarding the relationship between Plaintiff and proposed class counsel.

Defendant does not challenge the adequacy of Plaintiff as class representative or the adequacy of Zebersky, Payne, Shaw, Lewenz, LLP and WK&L as class counsel on any other grounds. The Court finds no conflict of interest between Plaintiff and the proposed class members. Plaintiff's interests appear to be aligned with those of the class in advancing its contract and covenant of good faith and fair dealing claims. Likewise, no conflict between Plaintiff's counsel and the putative class members is apparent. In support of the Motion, Plaintiff's counsel Zebersky, Payne, Shaw, Lewenz, LLP submitted a declaration, ECF No. [132-30] and WK&L submitted a declaration and Firm Resume, ECF No. [132-8]. Both law firms outline their litigation experience, including extensive experience in class-action litigation. *See* ECF Nos. [132-8], [132-30]. The Court, therefore, finds that Plaintiff's counsel can adequately prosecute this action on behalf of the entire class.

Accordingly, Plaintiff has satisfied the adequacy requirement of Rule 23(a).

**C. Rule 23(b)(3)**

To obtain class certification, Plaintiff must satisfy one of the three requirements enumerated in Rule 23(b). *See* Fed. R. Civ. P. 23(b). Plaintiff seeks to certify the class under Rule 23(b)(3), *see* ECF No. [132] at 39, which requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**i.   Predominance**

"That common questions of law or fact predominate over individualized questions means that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Terazosin Hydrochloride*, 220 F.R.D. at 694 (quoting *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989)). "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Jackson*, 130 F.3d at 1005 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).

Plaintiff asserts that "there are two, central liability questions subject to common proof that predominate," first "whether, under the Contracts-At-Issue, Defendant must provide notice to its customers of price increases" and second "whether Defendant's purported notices complied with the Contracts-At-Issue and good faith and fair dealing by fully informing customers of the nature of the increase so they could know their right to object to (and avoid) the increase." ECF No. [132] at 42. Those two essential questions boil down to whether Defendant materially breached its obligations under either the Contracts-At-Issue or the covenant of good faith and fair dealing.

The Court has already explained that whether there was a material breach depends on whether Plaintiff or any putative class member had either express or implied actual notice and that the question of actual notice must be answered individually for each class member. Therefore, the central question of material breach of the Contracts-At-Issue is not one capable of classwide resolution.

Similarly, the Court determined that the issue of whether Defendant met Plaintiff's reasonable expectations for Section 5(b) notice to satisfy the covenant of good faith and fair dealing is a factual question dependent on whether each class member had actual notice. Therefore,

the same individualized inquiry for actual notice will be necessary regarding the duty of good faith claim for each putative class members.

The issue central to the validity of both the contract and good faith and fair dealing claims is whether Defendant substantially complied with the Contracts-At-Issue and met the putative class members' reasonable expectations. Because liability hinges on an analysis of whether each putative class member had actual notice, individualized questions and proof will predominate.

Accordingly, Plaintiff has failed to meet its burden of satisfying the requirements of Rule 23(b)(3). Plaintiff does not seek class certification under Rule 23(b)(1) or (2). Therefore, class certification is not warranted, and the Court need not proceed further. *See Karhu,* 621 F. App'x at 946 (requiring the plaintiff to satisfy the requirements of Rule 23(b)(1), (2), or (3) for class certification).

### D. Request for Hearing

As a final matter, Plaintiff requests a hearing. *See* ECF No. [132] at 49. Given the Court's analysis above, the Court does not find a hearing to be necessary to address the issues presented. As such, the Court denies Plaintiff's request for a hearing.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification, **ECF Nos. [132]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 24, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record